```
        IN THE UNITED STATES DISTRICT COURT FOR
           THE SOUTHERN DISTRICT OF GEORGIA
                   SAVANNAH DIVISION
```

SEAFOODLICIOUS, INC., a           )
Georgia Corporation; VINCENT      )
TANG, an individual; and          )
JAMES LEE, an individual,         )
                                  )
     Plaintiffs,                  )
                                  )
v.                                )     CASE NO. CV419-116
                                  )
UNITED STATES OF AMERICA,         )
                                  )
     Defendant.                   )
                                  )

## O R D E R

Before the Court is Plaintiffs Seafoodlicious, Inc., Vincent Tang, and James Lee's Motion for Preliminary Injunction (Doc. 8), which Defendant United States of America has opposed (Doc. 12). For the following reasons, Plaintiffs' motion (Doc. 8) is **DENIED**.[1]

---

[1] Due to the COVID-19 pandemic and constraints on courtroom availability in the Savannah Division, there have been unfortunate delays in preparing and scheduling civil hearings. Thus, the Court was forced to cancel hearings on this motion, indicating they would be rescheduled. (Docs. 39, 43, 55.) The parties disagree over whether a hearing is required. (Doc. 51 at 9; Doc. 52 at 1.) "Although 7 U.S.C. § 2023(a)(17) refers to a 'hearing,' courts have held that a hearing is required only in the event that a court imposes a stay." Farid v. U.S. Dep't of Agric., Food & Nutrition Serv., No. EDCV 18-02021-CJC(SPx), 2019 WL 13045128, at *1 (C.D. Cal. Jan. 9, 2019); Sheikh's, Inc. v. United States, No. 10-62004-CIV, 2010 WL 5253531, at *3 (S.D. Fla. Dec. 15, 2010) (denying motion for administrative stay without a hearing "as a hearing is only required in the event that the Court imposes a stay[]"). Thus, upon further consideration, the Court now finds the matter appropriate for disposition without a hearing.

**BACKGROUND**

This case arises from Plaintiff Seafoodlicious's reauthorization to participate as a Supplemental Nutrition Assistance Program ("SNAP") – formerly the "Food Stamp Program" – retailer. (Doc. 9 at 1.) The United States Department of Agriculture ("USDA") oversees the SNAP program through the Food and Nutrition Service ("FNS"), which is tasked with authorizing food retailers to sell food to SNAP participants. (Id.)

Plaintiff Seafoodlicious is a specialty seafood market. (Id. at 5.) In addition to selling raw or frozen seafood, Plaintiff Seafoodlicious charges a fee to heat or cook the raw seafood on-site. (Doc. 12, Attach. 1 at 7.) Plaintiff Seafoodlicious has participated as a SNAP retailer for "some time." (Doc. 9 at 5.) Plaintiff Seafoodlicous formerly qualified to operate as a SNAP retailer under Criterion B – 7 C.F.R. § 278.1(b)(1)(iii). (Id. at 2.) To qualify under Criterion B, "firms must have more than 50 percent of their total gross retail sales in staple food sales." 7 C.F.R. § 278.1(b)(1)(iii). Staple foods are defined as

> those food items intended for home preparation and consumption in each of the following four categories: Meat, poultry, or fish; bread or cereals; vegetables or fruits; and dairy products . . . . Hot foods are not eligible for purchase with SNAP benefits and, therefore, do not qualify as staple foods for the purpose of determining eligibility under § 278.1(b)(1) of this chapter.

7 C.F.R. § 271.2. A retailer is ineligible for SNAP authorization

2

when it earns "more than 50 percent of [its] total gross sales in foods cooked or heated on-site by the retailer before <u>or after purchase</u>; [or] hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are . . . sold for carryout . . . ." 7 C.F.R. § 278.1(b)(1)(iv) (emphasis added).

According to 7 C.F.R. § 278.1, FNS can request that a retailer "be required to undergo a periodic reauthorization determination by updating any or all of the information on the firm's application form." 7 C.F.R. § 278.1(n). In this case, FNS was concerned that Plaintiff Seafoodlicious was operating on the " 'you buy, we fry' " model forbidden by SNAP regulations." (Doc. 12 at 10.) To address these concerns, on August 6, 2018, FNS sent Plaintiff Seafoodlicious a letter requesting information to verify Plaintiff Seafoodlicious's eligibility as a SNAP retailer. (Doc. 9, Attach. 1 at 2.) Moreover, the letter warned that "[i]f the information you submit is inadequate (i.e., unclear or incomplete) and does not demonstrate your eligibility for authorization, your authorization may be withdrawn." (<u>Id.</u>) In response to the letter, Plaintiffs submitted documentation to FNS.

On August 28, 2018, FNS sent a second letter to Plaintiffs informing them that additional information was needed to verify Plaintiff Seafoodlicious's eligibility. (Doc. 12 at 3.) Plaintiffs again submitted documentation to FNS.

on September 14, 2018, FNS notified Plaintiffs that its SNAP authorization would be withdrawn in accordance with 7 C.F.R. § 278.1(n). (Doc. 12, Attach. 1 at 120.) FNS had determined that the information Plaintiffs submitted was again inconclusive. (Id.)

On September 21, 2018, Plaintiffs sought administrative review of the revocation. (Id. at 123.)  The issue on review was "whether the Retailer Operations Division took appropriate action, consistent with Title 7 of the Code of Federal Regulations (CFR) Part 278, when it withdrew the authorization of [Plaintiff Seafoodlicious] to participate as a SNAP retail store." (Id. at 122.)

The objective of the administrative review, according to the Final Agency Decision, was not to determine Plaintiff Seafoodlicious's eligibility for SNAP participation. (Id. at 125.) Rather, the review was solely to determine whether or not Plaintiff Seafoodlicious failed to cooperate with the reauthorization process. (Id.) The decision went on to state that "documentation provided by [Plaintiffs] was not sufficient to enable the Retail Operations Division to determine whether or not the firm is primarily a restaurant rather than a grocery establishment." (Id. at 126.) The decision clarified that "failed to cooperate" does not imply that Plaintiffs were unwilling to provide the required information, but merely that they did not submit sufficient or clear information to enable FNS to make an eligibility

4

determination. (Id.) The Final Agency Decision determined, based on Plaintiffs' failure to provide evidence that would "definitively determine the [Plaintiffs'] eligibility for continued SNAP participation," that the withdrawal of authorization was appropriate. (Id.)

After receiving the Final Agency Decision, Plaintiffs filed this action pursuant to 7 U.S.C. § 2023. (Doc. 1 at 6.) Subsequently, Plaintiffs filed this motion for preliminary injunction requesting that the Court prohibit the USDA from withdrawing the Plaintiffs' SNAP eligibility until after a final determination of the merits of the case. (Doc. 9 at 8.)

**LEGAL STANDARD**

Pursuant to 7 U.S.C. § 2023(a)(17), an administrative action withdrawing SNAP authorization that is under judicial review remains in full effect unless "on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal." As a result, the standard for determining whether a preliminary injunction should be granted in this case is whether Plaintiffs can establish both (1) that they are likely to succeed on the merits and (2) that they will suffer irreparable

harm absent an injunction. Market v. United States, No. 21-cv-07811-CAS(AFMx), 2021 WL 6882420, at *6 (C.D. Cal. Dec. 6, 2021).

**ANALYSIS**

The central issue in this case is the parties' disagreement over the reason FNS withdrew Plaintiffs' SNAP authorization.[2] Plaintiffs argue that the issue is "whether the retailer qualifies to continue participation in the SNAP program." (Doc. 16 at 5.) Conversely, Defendant argues that the issue is whether Plaintiffs failed to cooperate with the reauthorization process by sending incomplete and unclear documentation. (Doc. 12 at 7-8.) The Court need not decide the issue at this time because Plaintiffs have not demonstrated they will suffer irreparable harm. See Farid v. United States Dep't of Agric., Food & Nutrition Serv., No. EDCV 18-02021-

---

[2] Defendant argues that neither Plaintiff Lee nor Plaintiff Tang have standing to challenge the USDA's decision not to reauthorize Plaintiff Seafoodlicious because they are not "retail stores" and are not authorized to seek review under 7 U.S.C. § 2023(a)(13), which only authorizes a "store, concern, or State agency" to obtain judicial review. (Doc. 12 at 5-6.) Defendant also argues they have asserted no injury apart from the revocation of Plaintiff Seafoodlicious's reauthorization. (Id. at 6.) Defendant cited no case in support of its argument. Plaintiffs argue that courts within and outside the Eleventh circuit have acknowledged that 7 U.S.C. § 2023 "encompasses the owner/applicant of a retail food store in a judicial appeal along with the retail food store itself." (Doc. 16 at 2.) It appears that some courts have allowed owner/applicants to seek judicial review pursuant to 7 U.S.C. § 2023 based on adverse action taken against their store. E.g., Badruddin v. United States, No. 1:17-CV-05542-LMM, 2019 WL 3855322, at *1 (N.D. Ga. July 15, 2019). Thus, based on the parties' arguments currently before the Court, it appears Plaintiffs Tang and Lee have standing.

CJC(SPx), 2019 WL 13045128, at *2 (C.D. Cal. Jan. 9, 2019) ("[T]he retailer must demonstrate **both** irreparable harm and a likelihood of success on the merits." (emphasis added)); Market, 2021 WL 6882420, at *8 (explaining that the court did not have to analyze one factor because plaintiff failed to carry burden on the other).

Plaintiffs argue that "the store's EBT transactions account for 42 % of its gross revenue . . . ." (Doc. 9 at 7.) Plaintiffs claim that they arrived at this figure by evaluating EBT transactions, which were $300,765.31, and gross sales, which were $712,452.00, between January 1, 2019, and May 29, 2019. (Doc. 9, Attach. 2 at 3, 3 n.1.) Going further, Plaintiffs argue that if they "lost their EBT," they would lose the revenue necessary to purchase inventory and relationships with vendors to buy inventory. (Doc. 9 at 7-8.) According to Plaintiffs, "[t]he corresponding loss in business will account for as much as another 20% of the store[']s revenue . . . ." (Id. at 8.) The Plaintiffs contend "the evidence in the record bears out that a loss of the EBT revenue, resulted in a loss of at least 43 % of the store's total gross revenue, and will likely result in a 20 % higher loss as the weeks press on . . . ." (Id.)

Defendant argues the figures submitted by Plaintiffs lack support. (Doc. 12 at 12.) Defendant contends Plaintiffs' purported loss of gross revenue of 43 percent only considers the average revenue between January 2019 through May 2019, and the loss of

7

revenue is only 16.37 percent when evaluating Plaintiffs' average revenue between January 2018 through May 2019. (Id. at 12-13.) Defendant also asserts that Plaintiff Tang's estimate that sales will decline 20 percent is speculative. (Id. at 13.) Finally, Defendant suggests Plaintiffs' months-long delay weighs against a finding of irreparable harm. (Id. at 14.)

In reply, Plaintiffs argue their business grew in 2019. (Doc. 16 at 7.) Therefore, Plaintiffs contend it was logical to use the store's more recent sales numbers for comparison purposes rather than the preceding year. (Id.)

"Losing a substantial percentage of a store's business, especially when coupled with the closing of the store, is enough to constitute irreparable harm." Sheikh's, Inc. v. United States, No. 10-62004-CIV, 2010 WL 5253531, at *2 (S.D. Fla. Dec. 15, 2010) "Courts have found that the loss of at least thirty (30) percent of a retail store's business can constitute irreparable harm." Shahana Trading Inc. v. United States, No. 2:11-cv-265-FtM-29DNF, 2011 WL 13319561, at *3 (M.D. Fla. Aug. 8, 2011). However, conclusory, speculative claims of business loss without support in the record are insufficient to establish irreparable harm. See Stonebridge of Gurnee, LLC v. United States, No. 20 C 6714, 2021 WL 6063866, at *7 (N.D. Ill. Dec. 22, 2021) (rejecting plaintiff's argument of irreparable harm because the plaintiff did not attach its financial statements); Market, 2021 WL 6882420, at *8 ("[T]he

Court finds that plaintiffs['] conclusory claim that 45 percent of their revenue arises from SNAP participants without providing documentation to support this claim cannot constitute irreparable injury."); <u>Shahana Trading Inc.</u>, 2011 WL 13319561, at *4 (concluding the petitioner failed to show irreparable injury because it did not provide sufficient documentation "for the amount of income derived from SNAP purchases for prior months or any monthly accounting showing the eligible and ineligible purchases made so that the Court could consider the net revenues of the business and determine what portion of the revenues were derived from SNAP purchases").

Plaintiffs have not made a sufficient showing of irreparable harm. The Court agrees with Defendant that Plaintiffs' calculations over such a brief period are not sufficient to warrant granting a preliminary injunction at this stage. <u>Cf. Mojo Express v. United States</u>, No. 19-CV-12970, 2019 WL 5294355, at *2 (E.D. Mich. Oct. 18, 2019) (finding the plaintiff had made a showing of irreparable harm after the plaintiff demonstrated what percentage of the business's sales were SNAP sales in 2015, 2017, 2018, and 2019); see <u>Market</u>, 2021 WL 6882420, at *8 (concluding plaintiff had not established irreparable harm because allegations were speculative). Additionally, Plaintiffs' delay, though perhaps not as long as others, and the fact that Plaintiffs appeared to be operating months after this motion, (<u>see</u> Docs. 46, 51), also weigh

9

against granting Plaintiffs' request. Phany Poeng v. United States, 167 F. Supp. 2d 1136, 1143 (S.D. Cal. 2001) ("Indeed, the fact that Plaintiff continues to operate his store almost three months after the sanctions were imposed suggests the contrary.").

## CONCLUSION

For the foregoing reasons, Plaintiffs are not entitled to a preliminary injunction, and Plaintiff's motion (Doc. 8) is **DENIED**. At this time, the Court **DIRECTS** the Clerk of Court to **TERMINATE** the administrative stay (Doc. 55) and **REINSTATE** Defendant's Motion for Summary Judgment (Doc. 20).

SO ORDERED this 31st day of August 2023.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA